## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANGEL TORRES,                        :
      Plaintiff,                   :    CIVIL NO. 3:11-cv-1582
                           :
    v.                               :    (Judge Mariani)
                           :
DR. JEFFREY YOCUM, et al.,            :
      Defendants                   :

### MEMORANDUM

## I.    BACKGROUND

On August 24, 2011, Plaintiff, Angel Torres, filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983 naming as Defendants employees at the Lebanon County Correctional Facility ("LCCF") in Lebanon, Pennsylvania, and a doctor independently contracted by the LCCF. (Doc. 1). The complaint alleges constitutional violations for the medical care Torres received while incarcerated at the LCCF and the grievances related to that medical care.[1] (Doc. 1). The named Defendants are Warden Robert J. Karnes, Deputy Warden Anthony Hauck, Nurse Trudy Seyfert,[2] Nurse Eva Neuin, Nurse Jacqueline Matias,[3] and Dr. Jeffrey Yocum[4]. (Doc. 1). The moving Defendants, Karnes, Hauck, Seyfert, Neuin, and Matias,

---

[1]    Torres is currently incarcerated at the State Correctional Institution in Somerset, Pennsylvania. (Doc. 45).

[2]    Incorrectly identified as Trudy Seifert in the complaint. *See* (Doc. 1).

[3]    Incorrectly identified as Jackie Maties in the complaint. *See* (Doc. 1).

[4]    Defendant Yocum is not an employee of the Lebanon County Correctional Facility. (Doc. 84, p. 2). He is an independent contractor hired by Lebanon County to provide medical services to inmates at

were employees at the Lebanon County Correctional Facility ("Lebanon County Defendants") at all times relevant to this matter.[5]  (Doc. 39).  On March 16, 2012, the Lebanon County Defendants filed the instant motion for summary judgment, supporting brief, statement of material facts, and exhibits.  (Docs. 37-40).  On June 5, 2012, Torres filed a brief in opposition to the motion for summary judgment, a responsive statement of material facts, and exhibits.  (Docs. 54, 55).  On June 18, 2012, the Lebanon County Defendants filed a reply brief.  (Doc. 57).  Torres filed additional exhibits on October 16, 2012.  (Doc. 66).  The motion is ripe for disposition and, for the reasons set forth below, will be denied.

## II.   STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990).  "[T]his standard

---

the LCCF.  (*Id.*).  The attorney for the Lebanon County Defendants has not entered his appearance on behalf of Defendant Yocum. Another attorney has, however, entered her appearance on behalf of Defendant Yocum.  (Doc. 57, p. 2; Doc. 81).  The issues raised by the Lebanon County Defendants in the instant motion for summary judgment are not raised on behalf of Defendant Yocum.  (Doc. 57, p. 2).  Thus, any claims set forth against Defendant Yocum will not be addressed in this Memorandum.

[5]     Defendant Neuin is no longer employed at the Lebanon County Correctional Facility.  (Doc. 39, ¶ 65; Doc. 57, p. 2).

2

provides that the mere existence of *some* alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment; the requirement

is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247-48 (1986) (emphasis in original); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d

Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect

the outcome of the case under applicable substantive law. *Id.*; *Gray v. York Newspapers,*

*Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party.

*Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and*

*Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence

of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). Once such a

showing has been made, the non-moving party must go beyond the pleadings with

affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific

material facts which give rise to a genuine issue. FED. R. CIV. P. 56; *Celotex*, 477 U.S. at

324; *Matsushita Electric Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating

that the non-moving party "must do more than simply show that there is some metaphysical

doubt as to the material facts"); *Wooler v. Citizens Bank*, 274 Fed. Appx. 177, 179 (3d Cir.

2008). The party opposing the motion must produce evidence to show the existence of

every element essential to its case, which it bears the burden of proving at trial, because "a

complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial." *Id.* at 323; *see also Harter v. G.A.F. Corp.*,

967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on

allegations or denials in its own pleadings; rather, its response must . . . set out specific

facts showing a genuine issue for trial.'" *Picozzi v. Haulderman*, 2011 WL 830331, *2 (M.D.

Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)). "Inferences should be drawn in the light most

favorable to the non-moving party, and where the non-moving party's evidence contradicts

the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW*

*of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912

(1993).

## III.   ALLEGATIONS IN THE COMPLAINT

The complaint, (Doc. 1), alleges the following facts:

Torres entered the LCCF on September 1, 2010. (Doc. 1, ¶ 1). On September 2,

2010, Torres was treated in the infirmary for a routine check-up by Defendants Seyfert and

Neuin. (Doc. 1, ¶ 2). At this examination, Torres informed Defendants Seyfert and Neuin

that he was HIV positive, he was diagnosed nineteen (19) years earlier, he was chronically

4

ill, and he took Atripla and multivitamins. (Id.). Torres also informed them of his doctor's name, address and telephone number, and the hospital where he previously received treatment. (Doc. 1, ¶ 3). Additionally, Torres stated that he suffered from neuropathy, back problems, and severe depression, and he listed the medications he took for these ailments. (Doc. 1, ¶ 4). Defendant Seyfert inquired as to how Torres would pay for his medications and Defendant Neuin asked if he had insurance. (Doc. 1, ¶ 5). Torres indicated that he did not have insurance and Defendant Seyfert stated that he would not get his medications from the LCCF since he could not pay for them. (Id.). Torres alleges that Defendants Seyfert and Neuin were deliberately indifferent to his medical needs in that they knew of the importance of his medications, but nevertheless denied him medical attention. (Doc. 1, ¶ 6).

Torres wrote to Tina Verna, the facility counselor, seeking an interview in order to call his doctor in New York to obtain his medications. (Doc. 1, ¶ 7). Counselor Verna wrote back to Torres and stated that "he had no proof."[6] (Id.).

Torres wrote to Defendant Matias on numerous occasions informing her of his serious medical need for his medications. (Doc. 1, ¶ 8). Defendant Matias failed to respond and ignored Torres' requests for help. (Id.).

Torres wrote letters to Dr. Yocum detailing his serious medical needs and indicating

---

[6]    It is unclear what Torres "had no proof" of, however this is immaterial to the instant motion for summary judgment.

that he was not receiving his medications because he did not have insurance. (Doc. 1, ¶ 9). Dr. Yocum failed to reply. (*Id.*). Torres spoke to Dr. Yocum in person on one occasion during a sick call. (*Id.*).

After not receiving medical treatment for months, Torres wrote a letter to Defendant Hauck, the Deputy Warden, outlining his medical condition, the seriousness of his medical needs, and the medications he was not receiving. (Doc. 1, ¶ 10). Defendant Hauck did not answer Torres' letter. (*Id.*).

Torres next wrote a letter to the Warden, Defendant Karnes, informing him of his chronic illness and the denial of his serious medical needs. (Doc. 1, ¶ 11). Torres alleges that his efforts to contact Defendant Karnes were unsuccessful and he never received a reply. (*Id.*).

When Torres initially arrived at the LCCF in September 2010, his CD4 count was 350. (Doc. 1, ¶ 9). In June 2011, his CD4 count dropped to 125 due to the denial of medical treatment. (*Id.*).

After seven (7) months of not receiving the requisite medical attention, Torres filed two (2) grievances concerning the medical treatment at the LCCF. (Doc. 1, ¶ 12). Torres then refers to one of the grievances, though he does not indicate which one, and states that Prison Administration forwarded the grievance to the Medical Department, which was denied. (*Id.*). Torres appealed the denial to Defendant Karnes, but his medical concerns

6

were ignored. (*Id.*). Torres then appealed to the Commissioner, who did not reply. (*Id.*).

The complaint alleges that the LCCF prison officials were deliberately indifferent to Torres' serious medical needs causing him injury and mental and emotional anguish. (Doc. 1, ¶ 13).


## IV.   STATEMENT OF UNDISPUTED FACTS

Except where expressly noted as disputed, the following facts of record are undisputed.

Torres was an inmate at the LCCF from September, 2010 until June, 2011. (Doc. 1, ¶ 1; Doc. 29, ¶ 1; Doc. 55, ¶ 1). He was again incarcerated at the LCCF during court appearances in July, August and September, 2011. (Doc. 38, Exhibit E).

Defendant Karnes is the Warden at the LCCF. (Doc. 38, Affidavit of Robert J. Karnes, ¶ 1; Doc. 39, ¶ 2). As part of his job, he reviews grievances and he was aware of the grievances submitted by Torres. (Doc. 38, Affidavit of Robert J. Karnes, ¶¶ 4, 6; Doc. 39, ¶ 21; Doc. 55, ¶¶ 24, 25).

Defendant Hauck is the Deputy Warden at the LCCF and, as part of his job, he receives and responds to grievances from inmates. (Doc. 38, Affidavit of Deputy Warden Hauck, ¶¶ 2, 3; Doc. 39, ¶ 3; Doc. 55, ¶ 11).

Defendant Matias is a nurse and medical supervisor at the LCCF and, as part of her

job, all inmate grievances concerning medical issues are forwarded to her attention. (Doc. 38, Affidavit of Jacqueline Matias, ¶¶ 1-5; Doc. 39, ¶ 8; Doc. 55, ¶¶ 9, 10).

Defendant Seyfert is a nurse at the LCCF. (Doc. 38, Affidavit of Trudy Seyfert; Doc. 55, ¶ 2). Defendant Neuin was a nurse at the LCCF, but she is no longer employed at the facility. (Doc. 38, Affidavit of Trudy Seyfert, ¶ 32).

On September 2, 2010, Torres, who is HIV positive, treated at the infirmary with Defendants Seyfert and Neuin. (Doc. 1, ¶ 2; Doc. 39, ¶ 79; Doc. 55, ¶ 2). The parties dispute as to whether Torres informed Defendants Seyfert and Neuin that he was HIV positive on that date. (Doc. 39, ¶ 83; Doc. 55, ¶¶ 2-4). Defendant Seyfert's treatment notes and affidavit indicate that on September 2, 2010, Torres did not mention that he was HIV positive at that time, though he did provide that information to the counselor. (Doc. 38, Affidavit of Trudy Seyfert, ¶¶ 15, 19; Doc. 55 ¶ 3). Torres maintains that he informed Defendants Seyfert and Neuin on September 2, 2010 that he was HIV positive. (Doc. 55 ¶ 2).

Torres treated with a doctor in Flushing, New York for his HIV. (Doc. 38, Exhibits H, I; Doc. 55, ¶ 5; Doc. 55, Exhibit D-1). Torres took medication daily for his HIV and mental health impairments, he went to a methadone clinic, he suffered from chest pain, and he had a history of heartburn and anxiety attacks. (Id.).

The LCCF provides HIV/Aids testing and mental health/mental retardation services

for all inmates. (Doc. 39, ¶¶ 47, 50). All inmates with known HIV are given a chest x-ray upon commitment to the facility. (Doc. 38, p. 33; Doc. 55, ¶ 13; Doc. 55, Exhibit E-3, ¶ 18, Exhibit F). Torres underwent a chest x-ray on September 9, 2010, which was normal. (Doc. 38, p. 33; Doc. 55, Exhibit F).

On March 9, 2011, Torres filed grievance number 2011-31 complaining about the medical care he received at the LCCF and his medical treatment on September 2, 2010. (Doc. 38, Exhibit A; Doc. 39, ¶ 5; Doc. 55, ¶ 18). Defendant Hauck received the grievance on March 17, 2011, and forwarded it to the Medical Department for review. (Doc. 38, Exhibit A; Doc. 55, ¶¶ 18, 19). Defendant Matias, from the Medical Department, provided a response. (Doc. 38, Exhibit B; Doc. 55, ¶ 19). Torres appealed the grievance to the Defendant Warden Karnes, who provided a response on April 1, 2011, stating that he would forward Torres' concerns to the prison physicians as they are responsible for medication/ medical attention. (Doc. 38, Affidavit of Robert J. Karnes, ¶ 7; Doc. 38, Exhibit E; Doc. 39, ¶¶ 22, 23, 25; Doc. 55, ¶¶ 23, 26, 27).

On April 26, 2011, Torres filed grievance number 2011-55 complaining about medical care he received on April 19, 2011 regarding a rib injury, and about a sick call slip he submitted in March, 2011 concerning a sickness. (Doc. 38, Exhibit C; Doc. 38, Exhibit J, ¶ 10). Prison records reveal that Defendant Hauck received this grievance and Defendant Matias provided a response. (Doc. 38, Affidavit of Deputy Warden Hauck, ¶¶ 8, 9; Doc. 38,

9

Exhibit D). The response included all the medical treatment that Torres received while incarcerated at the LCCF. (Doc. 38, Affidavit of Deputy Warden Hauck, ¶ 9; Doc. 38, Exhibit D).

The parties dispute whether Torres was denied medications because he could not afford to pay for them and he did not have insurance to cover the cost. (Doc. 39, ¶ 38; Doc. 55, ¶¶ 7, 15). The Lebanon County Defendants maintain that, pursuant to the LCCF Policy, inmates are provided with treatment and medically approved medication even if they do not have medical insurance or cannot afford treatment. (Doc. 39, ¶¶ 33-35). The policy states, "*[n]o inmate shall be denied access to medical treatment due to lack of funds.*" (Doc. 38, Rules and Regulations of LCCF) (emphasis in original). Torres disputes this contention. (Doc. 55 ¶¶ 7, 15).

The parties dispute how many sick call requests Torres submitted while incarcerated at the LCCF. (Doc. 39, ¶ 10; Doc. 55, ¶ 14). Torres states that he submitted numerous sick call requests. (Doc. 55, ¶ 14). In Defendant Matias' response to grievance number 2011-33, she indicated that Torres completed one (1) sick call regarding a toothache since he entered the facility on September 2, 2010 and he did not complete any sick calls concerning the issues in grievance number 2011-31 and no request slips were turned in to medical. (Doc. 38, Exhibit B; Doc. 39, ¶¶ 9-11).

Treatment records reveal that Torres was seen on the following dates for various

10

medical complaints: September 2, 2010; September 7, 2010; September 8, 2010; January

16, 2011; March 18, 2011; April 19, 2011; May 3, 2011; May 5, 2011; May 6, 2011; May 20,

2011; May, 25, 2011; July 26, 2011; and, July 29, 2011. (Doc. 38, Affidavit of Jacqueline

Matias, ¶ 12; Doc. 38, Exhibit J; Doc. 39, ¶ 18).

## V.    DISCUSSION

### A.    Deliberate Indifference to Serious Medical Needs

A prison official violates the Eighth Amendment by denying or delaying reasonable

requests by an inmate for medical treatment, provided the challenged conduct constitutes

deliberate indifference to serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104

(1976); *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346-47 (3d

Cir.1987). Deliberate indifference occurs when a prison official knows of and disregards an

excessive risk to a prisoner's health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Innis v.*

*Wilson*, 334 Fed. Appx. 454, 456 (3d Cir. 2009). Deliberate indifference has been found

where the prison official knows of a prisoner's need for medical treatment but intentionally

refuses to provide it, delays necessary medical treatment based on a non-medical reason,

or prevents a prisoner from receiving needed or recommended medical treatment. *Rouse*

*v. Plantier*, 182 F.3d 192, 197; *Thomas v. Varano*, 532 Fed. Appx. 142, 146 (3d Cir. 2013).

Torres claims that the Lebanon County Defendants were deliberately indifferent to

11

his serious medical needs because they failed to provide him with medical treatment and medications, and this alleged denial resulted in physical and emotional injuries. (Doc. 1, ¶¶ 5, 6, 8, 10-13; Doc. 54, p. 8; Doc. 55, ¶ 32). The Lebanon County Defendants counter that they were never deliberately indifferent to Torres' medical needs, Torres was provided with medical care at the LCCF, he was seen in the medical department on numerous occasions, he never submitted sick call requests concerning his HIV, and he never signed up for HIV/Aids testing or mental health/mental retardation services while at the LCCF. (Doc. 40, pp. 1, 2, 10).

To establish deliberate indifference, Torres must first show that he has a serious medical need. *Estelle*, 429 U.S. at 106. The allegations in the complaint indicate that Torres suffered from HIV and mental health impairments when he was incarcerated at the LCCF. (Doc. 1). HIV is a serious medical need and the failure to treat HIV can result in fatal injury. *See Montgomery v. Pinchak*, 294 F.3d 492, 500 (3d Cir. 2002) (prisoner diagnosed with HIV demonstrated a serious medical need for Eighth Amendment purposes). Moreover, the Rules and Regulations of the LCCF provide that HIV medications are "life-sustaining," indicating that HIV is a serious condition. (Doc. 38, Exhibit F). Additionally, a mental illness may constitute a serious medical need. *See Goodrich v. Clinton County Prison*, 214 Fed. Appx. 105, 110-11 (3d Cir. 2007); *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 763 (3d Cir. 1979). Thus, Torres has met the first

12

prong of *Estelle*.

Torres must next establish that the Lebanon County Defendants acted "with deliberate indifference" to his serious medical needs. *Estelle*, 429 U.S. at 104-06; *Innis*, 334 Fed. Appx. at 456. Due to the alleged denial of his HIV and mental health medications, Torres states that his CD4 blood count dropped, and he suffered from vomiting, uncontrollable bowel movements, lack of sleep, lack of appetite, low energy, and pain throughout his body. (Doc. 54, p. 8; Doc. 55, ¶ 32).

In *Montgomery*, an inmate brought a § 1983 action against prison officials, a physician, and the corporate medical care provider, alleging that they violated his Eighth Amendment rights by depriving him of prescribed medical treatment. *Montgomery*, 294 F.3d 492. The Third Circuit Court of Appeals stated that the inmate's allegations that he was not provided with HIV medications for ten (10) months, and that he was denied x-rays, blood work, and other prescription medications, constituted a *prima facie case* of deliberate indifference where his white blood cell count dropped to a dangerously low level during that period. *Id.* (citing *Durmer v. O'Carroll, M.D.*, 991 F.2d 64, 68 (3d Cir. 1993) (deliberate indifference may exist in a variety of circumstances, including where "prison authorities prevent an inmate from receiving recommended treatment," or "where knowledge of the need for medical care [is accompanied by the] intentional refusal to provide that care")).

In the present case, Torres was treated by Defendants Seyfert and Neuin in

13

September, 2010, and he alleges that they denied him medical care in violation of his constitutional rights. (Doc. 1, ¶¶ 2, 6). Torres states that he informed Defendants Seyfert and Neuin that he was chronically ill, he was HIV positive, he suffered from severe depression, neuropathy and back problems, and he took medication daily to treat these ailments. (*Id.* at ¶¶ 2-4). Torres also states that he informed Defendants Seyfert and Neuin of his doctor and the hospital where he previously received treatment. (*Id.* at ¶ 3). When inquiring about his medications, Torres alleges that Defendant Seyfert stated, "that[']s alot [sic] of medications how do you plan to pay for them?", and Defendant Neuin asked, "do you have insurence [sic]?" (*Id.* at ¶ 5). Defendant Seyfert allegedly told Torres he would not receive his medications at the LCCF because he did not have insurance and could not afford to pay for them. (*Id.*). Torres alleges that Defendants Seyfert and Neuin knew of his medical needs, but failed to act, and denied him medical care in violation of the Fifth, Eighth and Fourteenth Amendments. (*Id.* at ¶ 6).

Defendant Seyfert counters that she never told Torres that he would not receive medical treatment or medications if he could not afford them, and Torres did not complain to her about lack of treatment for HIV/Aids or mental health issues. (Doc. 38, Affidavit of Trudy Seyfert, ¶¶ 31, 32). In support of her position, she refers to the LCCF Policy which states that inmates are provided with treatment and medically approved medication even if they do not have medical insurance or cannot afford treatment. (*Id.* at ¶ 11). The policy

14

states, "[n]o inmate shall be denied access to medical treatment due to lack of funds."

(Doc. 38, Rules and Regulations of LCCF) (emphasis in original). Further, Defendant

Seyfert states that she "personally never denied the Plaintiff access to medical treatment."

(Id. at ¶ 12).

Defendant Seyfert's treatment notes of September 2, 2010 indicate that Torres was

seeking methadone treatment for withdrawal from heroin. (Doc. 38, Affidavit of Trudy

Seyfert, ¶ 16; Doc. 38, Exhibit G). Defendant Seyfert notes that Torres did not mention he

was HIV positive at that time, but the "[i]nmate also told counselor that he is HIV+ but does

not have any medication at home to bring in." (Doc. 38, Affidavit of Trudy Seyfert, ¶¶ 15,

19; Doc. 38, Exhibit G). Defendant Seyfert clearly knew on September 2, 2010 that Torres

was HIV positive, as is evidenced by her own treatment notes. (Doc. 38, Exhibit G).

Defendant Seyfert acknowledges that "patients with HIV should not go on and off HIV

medication because of developing a drug resistant strain of HIV", however she states that

the final decision to prescribe medication is with the doctor, and licensed practical nurses

are not authorized by law to prescribe medication. (Doc. 38, Affidavit of Trudy Seyfert, ¶¶

14, 22, 23). Defendant Seyfert again treated Torres on September 7, 2010, and noted that

he is HIV positive, he received treatment from a doctor in Flushing, New York, and he took

medications for his HIV and mental health impairments. (Doc. 38, Affidavit of Trudy Seyfert,

¶ 24; Doc. 38, Exhibits H, I).

15

These conflicting accounts of when Defendant Seyfert knew of Torres' HIV, and her treatment of Torres, create a genuine issue of material fact as to whether Defendant Seyfert was deliberately indifferent to Torres' serious medical needs. *See Natale v. Camden*, 318 F.3d 575 (3d Cir. 2003) (The Third Circuit Court of Appeals reversed the district court's grant of summary judgment, finding that an insulin-dependent diabetic detainee stated a question of fact as to whether prison health services employees were deliberately indifferent to his serious medical needs for failing to administer insulin during the first twenty-one (21) hours of his incarceration, causing a stroke).

Regarding Defendant Neuin, Torres alleges that she knew of his serious medical needs but denied him medical attention. (Doc. 1, ¶ 6). Defendant Neuin assisted Defendant Seyfert when Torres visited the Medical Department in September, 2010. Defendant Matias, as the medical supervisor, states that Defendant Neuin was not personally assigned to provide nursing care to Torres. (Doc. 38, Affidavit of Jacqueline Matias, ¶¶ 30, 31). In her answer to Torres' interrogatories, Defendant Neuin states that she "does not have any independent recollection of the time that she worked" at the prison and she "does not have an independent recollection of the Plaintiff's visit to the medical department on September 2, 2010, except based upon a review of the medical records." (Doc. 85, ¶¶ 4, 7). Further, she "does not have any independent recollection of whether or not she asked Plaintiff if he had insurance" and she does not recall if Torres told her about

his doctor or the hospital where he previously treated. (Doc. 85, ¶¶ 12-14). Defendant

Neuin's inability to recall the days she treated or assisted in treating Torres demonstrates

that there is a genuine issue of material fact precluding the award of summary judgment. It

is noted that, "[a] disagreement over the facts in evidence is all plaintiff needs to survive

summary judgment." *Petrichko v. Kurtz*, 117 F. Supp. 2d 467, 473 (E.D. Pa. 2000) (denying

summary judgment because the "defendants rely heavily on the differences between

plaintiff's recollection of the facts and the personal recollections of the defendants

themselves, who in their affidavits each deny having any knowledge of plaintiff's injury and

the events forming the basis of this action").

Counsel for the Lebanon County Defendants provided Defendant Neuin's answers to

Torres' interrogatories, however Defendant Neuin did not sign her answers or verify them

under penalty of perjury, as required by Federal Rule of Civil Procedure 33(b).[7] *See* (Doc.

85); *see also Bracey v. Grenoble*, 494 F.2d 566 (stating that the district court improperly

used the defendant's answers to interrogatories as they were not made by the defendant,

they were not made under oath, and they were not introduced into evidence) (3d Cir. 1974);

*Unzicker v. A.W. Chesterston Co.*, 2012 WL 1966028 (E.D. Pa. 2012) (plaintiff failed to

verify his supplemental interrogatory answers as required by Federal Rule of Civil

---

[7]    Federal Rule of Civil Procedure 33(b) provides, in part, that interrogatories must be answered
"by the party to whom they are directed", "[e]ach interrogatory must, to the extent it is not objected to, be
answered separately and fully in writing under oath", and "[t]he person who makes the answers must sign
them." FED. R. CIV. P. 33(b)(1)(A), (b)(3), (b)(5).

Procedure 33(b), therefore the court struck the unverified answers). There is no other declaration on record from Defendant Neuin. Therefore, summary judgment as to Defendant Neuin will be denied.

As to Defendant Matias, Defendants argue that she does not have any liability because she provided responses to Torres' grievances, and she never personally provided nursing care to Torres. (Doc. 57, pp. 4-6). In her affidavit, Defendant Matias states that as the medical supervisor at the LCCF, she supervises the Medical Department, maintains inmate medical records, provides nursing care to inmates, and receives inmate grievances concerning medical issues that are forwarded to her. (Doc. 38, Affidavit of Jacqueline Matias, ¶¶ 3, 5). She received Torres' grievances, reviewed the pertinent medical records, and forwarded her responses to Defendant Hauck. (*Id.* at ¶¶ 6-8, 10-12). Additionally, she affirms that she never personally treated Torres, never personally denied him access to medical treatment, and licensed practical nurses in general are not authorized by law to prescribe medication. (*Id.* at ¶¶ 25, 27, 28). In response, Torres argues that Defendant Matias was well aware of his medical needs, as she supervises the medical department and reviews the grievances sent to her office. (Doc. 55, ¶¶ 9-12). Torres states that Defendant Matias "admits that she did investigate plaintiff[']s complain [sic] but did nothing." (Doc. 55, ¶ 12). Torres also submitted a sworn affidavit by a fellow inmate stating that Defendant Matias ignored Torres' letters. (Doc. 55, Ex. I-2).

This Court finds that there are genuine issues of material fact as to whether Defendant Matias was deliberately indifferent to Torres' serious medical needs, thus precluding an award of summary judgment in favor of Defendant Matias.

Defendants Karnes and Hauck contend that Torres was provided with medical care, and they never directed that medical care or medications not be provided to Torres while he was incarcerated at the LCCF. (Doc. 40, pp. 10-11). Further, they state that they do not direct or prohibit the medical care or medication that is provided to inmates at the LCCF. (Doc. 40, p. 11).

Defendant Karnes submitted an affidavit stating, *inter alia*, that he "never directed that medical or nursing care recommended by a physician or the Medical Department not be provided to Plaintiff throughout the period of his incarceration", and further that he "never directed that medication prescribed by a physician not be provided to Plaintiff throughout the period of his incarceration." (Doc. 38, Affidavit of Robert J. Karnes, ¶¶ 18, 19). Defendant Karnes also affirms that he was not deliberately indifferent to Torres' medical needs while he was incarcerated at the LCCF. (*Id.* at ¶ 20).

In response, Torres maintains that Defendant Karnes knew of his medical problems, "but opted to do nothing" and "conveniently neglected to come to [his] [] aid." (Doc. 55, ¶¶ 24, 28). In his interrogatories to Defendant Karnes, Torres asked whether he views all grievances and their appeals, to which Defendant Karnes answered, yes. (Doc. 30, Attach.

3, ¶ 17; Doc. 55, ¶¶ 24, 28). Defendant Karnes acknowledged that he responded to Torres'
grievance number 2011-31, and he was aware of two (2) grievances that Torres filed
regarding medical care at the LCCF. (Doc. 38, Affidavit of Robert J. Karnes, ¶¶ 7, 10; Doc.
55, ¶¶ 26, 27). Torres also asked Defendant Karnes if he read all correspondences
addressed to him and Defendant Karnes responded that he read those that he actually
received. (Doc. 30, Attach. 3, ¶ 18; Doc. 55, ¶ 25). Torres therefore argues that Defendant
Karnes was aware that he was being denied medical treatment and medications, but
Defendant Karnes failed to help him. (Doc. 55, ¶ 28).

Similarly, Defendant Hauck submitted an affidavit stating, *inter alia*, that he "never
directed that medical or nursing care recommended by a physician or the Medical
Department not be provided to Plaintiff throughout the period of his incarceration" and he
"never directed that medication prescribed by a physician not be provided to Plaintiff
throughout the period of his incarceration." (Doc. 38, Affidavit of Deputy Warden Hauck, ¶¶
12, 13). Additionally, Defendant Hauck affirms that he was not deliberately indifferent to
Torres' grievances, he promptly investigated his allegations, and he was not deliberately
indifferent to Torres' medical needs. (*Id.* at ¶¶ 10, 14).

In his answers to Torres' interrogatories, Defendant Hauck stated that he was aware
of the grievances Torres filed and he responded to the grievances. (Doc. 30, Attach. 4;
Doc. 55, ¶¶ 17, 18). Torres asserts that Defendant Hauck knew of his serious medical

20

needs and the denial of medical care, but Defendant Hauck failed to act, thus resulting in deliberate indifference to his serious medical needs. (Doc. 55, ¶¶ 17, 18).

Torres submitted two affidavits from fellow inmates in support of his contention that Defendant Hauck knew that he was being denied medical treatment, but failed to act. (Doc. 55, Exs. I, I-2). The first affidavit states that Torres made complaints about the medical staff's refusal to give him medication because he did not have insurance. (Doc. 55, Ex. I). The affidavit further states that Torres "had spoken with Mr. Tony Hauck in regards to not receiving meds and Tony Hauck just brushed him off and other times just ignored him." (Doc. 55, Ex. I). The second affidavit states that Torres "kept complaining to Deputy Warden of operations Tony Hauck about not receiving medication because he had no medical insurance", and Defendant Hauck "outright ignore[d]" Torres. (Doc. 55, Ex. I-2). This Court notes that *pro se* inmates are "'in a decidedly difficult position from which to generate record evidence' and that affidavits 'are about the best that can be expected' at the summary judgment stage." *Shelton v. Bledsoe*, 522 Fed. Appx. 109, *2 (3d Cir. 2013) (reversing the District Court's grant of summary judgment in favor of defendants, finding that the inmate's sworn affidavits were sufficient evidence to show a genuine issue of material fact) (citing *Brooks v. Kyler*, 204 F.3d 102, 108 n.7 (3d Cir. 2000)).

Based on the foregoing, there are genuine issues of material fact precluding summary judgment as to Defendants Seyfert, Neuin, Matais, Karnes and Hauck. *See*

*Celotex*, 477 U.S. 317; *Turner*, 901 F.2d at 340.  At this juncture, it cannot be said that the

Lebanon County Defendants were not deliberately indifferent to Torres' serious medical

needs.  Therefore, the Lebanon County Defendants are not entitled to summary judgment.

### B.    *Respondeat Superior* and Personal Involvement

To state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that the

defendant, while acting under color of state law, deprived him of a right, privilege or

immunity secured by the Constitution or by the laws of the United States.  *See* 42 U.S.C. §

1983; *see also West v. Atkins*, 487 U.S. 42, 48 (1988); *Barna v. City of Perth Amboy*,

42 F.3d 809, 815 (3d Cir. 1994).  A prerequisite for a viable civil rights claim is that the

defendant directed, or knew of and acquiesced in, the deprivation of the plaintiff's

constitutional rights.  *See Monell v. Dep't of Social Serv.*, 436 U.S. 658, 694-95 (1978); *Gay*

*v. Petsock*, 917 F.2d 768, 771 (3d Cir. 1990); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-

08 (3d Cir. 1988).  Claims brought under this section cannot be premised on a theory of

*respondeat superior*.  *Rode*, 845 F.2d at 1207.  The plaintiff must allege that the defendant

was personally involved in the events or occurrences that underlie the claim.  *See Atkinson*

*v. Taylor*, 316 F.3d 257, 270-71 (3d Cir. 2003).

Defendants Karnes, Hauck and Matias argue that they are entitled to summary

judgment as they cannot be held liable based on a theory of *respondeat superior*.  (Doc. 40,

pp. 13-16).  They assert that they did not have any personal involvement in the alleged

constitutional violations and they cannot be held liable based on their employment or supervisory capacity. (Doc. 40, p. 15). Upon review, Torres has alleged the personal involvement of these Defendants; his allegations are not merely based on their supervisory status. Torres alleges that they each knew of his medical condition and that he was being denied medications, but they failed to respond to his letters, failed to help him, ignored his medical concerns, and he ultimately received no remedy for filing grievances. (Doc. 1, ¶¶ 8, 10-12; Doc. 54, p. 1).

Defendants Karnes and Hauck also argue that they are entitled to summary judgment because participation in after-the-fact review of a grievance or appeal is insufficient to establish their personal involvement. (Doc. 40, pp. 16-20) (citing *Diaz v. Palakovich*, 2009 U.S. Dist. LEXIS 25186, *12-13 (M.D. Pa. 2009)). Torres responds, *inter alia*, that the contradiction between Defendants' claims and his own imply a genuine issue of material fact and that summary judgment should be denied. (Doc. 54, p. 5).

As stated, Torres filed grievance number 2011-31 on March 9, 2011. (Doc. 38, Exhibits A, E). On March 17, 2011, Prison Administration responded to the grievance, stating that the grievance would be forwarded to the Medical Department for review. (*Id.*). Defendant Hauck contacted the Medical Department to obtain information about Torres' medical care, and Defendant Matias provided a response. (Doc. 38, Affidavit of Deputy Warden Hauck, ¶¶ 5, 6; Doc. 38, Exhibits A, B). Torres appealed the denial of grievance

23

number 2011-31 to Defendant Karnes. (Doc. 38, Affidavit of Robert J. Karnes, ¶¶ 7-9; Doc.

38, Exhibit E). Defendant Karnes responded to the appeal on April 1, 2011, stating that

prison physicians or their designees are responsible for medication and medical concerns,

therefore he forwarded Torres' concerns to the prison physician. (Id.).

Torres then filed grievance number 2011-55 on April 26, 2011. (Doc. 38, Exhibit C).

Defendant Hauck received this grievance and Defendant Matias provided a response.

(Doc. 38, Affidavit of Deputy Warden Hauck, ¶¶ 8, 9; Doc. 38, Exhibit D). The response

included all the medical treatment that Torres received while incarcerated at the LCCF.

(Doc. 38, Affidavit of Deputy Warden Hauck, ¶ 9; Doc. 38, Exhibit D).

Defendant Karnes acknowledges that he was aware of the grievances Torres filed

relating to his medical treatment and he states that he responded to grievance number

2011-33. (Doc. 38, Affidavit of Robert J. Karnes, ¶¶ 4, 6; Doc. 40, p. 18). However, he

argues that he did not have any involvement in Torres' alleged constitutional violations, he

was only involved after Torres filed grievances. (Doc. 40, p. 19). As the Warden of the

LCCF, Defendant Karnes states that he never directed that medical or nursing care

recommended by a physician or the Medical Department not be provided to Torres, and he

never directed that Torres not be provided his medication. (Id. at ¶¶ 18, 19). Generally, as

the Warden of the LCCF, Defendant Karnes does not direct or prohibit medical or nursing

care or prescribe medications. (Id. at ¶¶ 23, 24). As stated above, Torres disputes these

statements and counters that Defendant Karnes was aware that he was being denied medical treatment and medications, but Defendant Karnes failed to help him. (Doc. 55, ¶ 28).

Defendant Hauck states that he received the grievances filed by Torres and contacted the Medical Department to obtain information about the grievances, and responded promptly. (Doc. 38, Affidavit of Deputy Warden Hauck, ¶¶ 4-9; Doc. 38, Exhibit B). As Deputy Warden of the LCCF, Defendant Hauck states that he never directed that medical or nursing care recommended by a physician or the Medical Department not be provided to Torres, and he never directed that Torres' medication not be provided to him. (Doc. 38, Affidavit of Deputy Warden Hauck, ¶¶ 12, 13). Generally, as the Deputy Warden of the LCCF, Defendant Hauck does not direct or prohibit medical or nursing care or prescribe medications. (Id. at ¶¶ 15, 16). Torres responds that Defendant Hauck was aware of his serious medical needs and the denial of medical care, but Defendant Hauck failed to act. (Doc. 55, ¶¶ 17, 18). The affidavits submitted by Torres support this contention. (Doc. 55, Exs. I, I-2).

This Court finds that Torres has submitted evidence to contradict the affidavits of Defendants Karnes and Hauck, in which they state that they were not personally involved in Torres' alleged constitutional violations. Accordingly, there is a genuine issue of material fact as to Defendants Karnes and Hauck, and their request for summary judgment based on

*respondeat superior* and lack of personal involvement will be denied. *See Daley v. Lapin*, 2014 WL 306932 (3d Cir. 2014) (vacating the District Court's grant of summary judgment in favor of the Warden and Associate Wardens finding there were fact issues as to their roles and authority in denying inmate's dietary request).

As to Defendant Matias, Defendants argue that she cannot be held liable based on her supervisory status. (Doc. 40, p. 15). However, as indicated above, Torres has not merely alleged that Defendant Matias is liable based on her supervisory status, he has set forth allegations, and an affidavit in support thereof, that Defendant Matias was aware of his serious medical needs, but failed to act. (Doc. 55, ¶¶ 9-12; Doc. 55, Ex. I-2). Torres asserts that he attempted to contact Defendant Matias on numerous occasions, but she intentionally ignored him despite being aware of his serious medical needs. (Doc. 1, ¶ 8).

In light of the contradictory evidence, this Court finds that there are genuine issues of material fact precluding the entry of summary judgment as to Defendants Karnes, Hauck and Matias on these grounds. *See Consonery v. Pelzer,* 2013 WL 593982, *7 (W.D. Pa. 2013) (the District Court denied summary judgment, in part, stating, "the record, viewed in the light most favorable to the Plaintiff, raises a genuine issue of material fact as to whether each Defendant was aware of Plaintiff's need for treatment for a condition causing severe chronic pain and yet stood idly by.").

## VI.    CONCLUSION

Based on the foregoing, the Lebanon County Defendants' motion for summary

judgment will be denied.  An appropriate Order follows.

Date: May 30 , 2014

Robert D. Mariani
United States District Judge