## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGEL TORRES, | Civil No. 3:11-cv-1582 |
| Plaintiff | (Judge Mariani) |
| v. | |
| DR. JEFFREY YOCUM, et al., | |
| Defendants | |

### MEMORANDUM

On August 24, 2011, Plaintiff, Angel Torres, initiated the instant civil rights action pursuant to 42 U.S.C. § 1983.[1] (Doc. 1). The complaint alleges that Torres was deprived of his HIV medication during his confinement at the Lebanon County Correctional Facility ("LCCF").[2] Torres alleges he suffered from damage to his health based on the failure to receive his HIV medication. (Id.). The named Defendants are Dr. Jeffrey Yocum, Nurse Trudy Seyfert, Nurse Eva Neuin, Nurse Jacqueline Matias, Deputy Warden Anthony Hauck, and Warden Robert J. Karnes. (Id.).

Presently pending before the Court is Defendant Yocum's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 110). For the reasons set forth below, the Court will deny Defendant Yocum's motion.

---

[1] Torres initiated this action *pro se*. On October 20, 2014, Bonnie L. Kift, Esquire entered her appearance on behalf of Torres. (Doc. 93).

[2] Torres is no longer incarcerated. (Docs. 102, 109).

I.  **Standard of Review**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the

record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

## II. Statement of Undisputed Facts

With the above standard of review in mind, the following are the facts material to the present motion, drawing all reasonable inferences in favor of the non-moving party, Torres.

On September 1, 2010, Torres arrived at the LCCF. On September 2, 2010, Nurse Seyfert examined Torres. (Doc. 112, ¶ 1; Doc. 38-3, p. 20; Doc. 125, ¶ 1). Nurse Seyfert was aware that Torres purported to be HIV positive. (*Id.*). The parties dispute whether Torres told Nurse Seyfert that he had HIV medication at home to bring to the prison. (Doc. 112, ¶ 2; Doc. 38-3, p. 19; Doc. 125, ¶ 2).

On September 7, 2010, Nurse Seyfert again treated Torres. (Doc. 112, ¶ 3; Doc. 38-3, p. 19; Doc. 125, ¶ 3). During the examination, Torres stated that he took Atripla, an HIV medication, and that he received HIV treatment from Dr. Santangelo at Woodhull Hospital in Flushing, New York. (Doc. 112, ¶ 4; Doc. 38-3, p. 19; Doc. 125, ¶ 4). The medical staff filled out a "Physical Examination Form", which indicated that Torres reported

having HIV and sciatica. (Doc. 112, ¶ 5; Doc. 38-3, p. 13; Doc. 125, ¶ 5). Torres also reported taking Atripla, Paxil, Vistaril, Remeron, Ultram, and Neurontin. (*Id.*).

The parties dispute whether the LCCF has an internal procedure requiring the medical staff to verify prescriptions that Torres was purportedly prescribed. (Doc. 111, Ex. B; Doc. 112, ¶ 6; Doc. 125, ¶ 6). Torres did not bring any prescriptions or medications with him to the LCCF, therefore the medical staff was required to follow-up with Torres' physician, Dr. Santangelo. (Doc. 112, ¶ 7; Doc. 38-3, p. 19; Doc. 125, ¶ 7). Torres asserts that Defendant Yocum was a member of the medical staff and thus responsible for following-up with Torres' physician and referring him for any testing. (Doc. 125, ¶ 7).

On September 10, 2010, Defendant Yocum treated Torres for the purpose of clearing him for entry into the general population. (Doc. 111, Ex. B, p. 26; Doc. 112, ¶ 8; Doc. 38-3, p. 19; Doc. 125, ¶ 8). Prior to the exam, Defendant Yocum reviewed the nursing notes, and was aware that Torres reported that he was HIV positive, was treating with Dr. Santangelo, and taking Atripla and other medications. (Doc. 111, Ex. B, pp. 26, 104; Doc. 112, ¶ 9; Doc. 125, ¶ 9). The parties dispute whether Defendant Yocum believed that the medical staff was in the process of confirming Torres' medical history and medications per LCCF procedure. (Doc. 112, ¶ 10; Doc. 112, Ex. B, p. 104; Doc. 125, ¶ 10). The parties further dispute whether Torres informed Defendant Yocum of his medical issues, including his HIV and drug addiction. (Doc. 112, ¶ 12; Doc. 112, Ex. A, p. 53, Ex. B, 104; Doc. 125, ¶

12). On September 10, 2010, Defendant Yocum cleared Torres for entry into the general population. (Doc. 111, Ex. B, p. 57; Doc. 112, ¶ 11; Doc. 125, ¶ 11).

The parties dispute whether Defendant Yocum was ever informed of Torres' medical needs, or ever treated Torres, after the September 10, 2010 exam. (Doc. 112, ¶¶ 13-16; Doc. 125, ¶¶ 13-16).

Defendant Yocum never received any grievances, appeals, or letters about Torres' alleged unmet medical needs. (Doc. 111, Ex. B, pp. 13, 54-55, 60-61; Doc. 112, ¶ 17; Doc. 125, ¶ 17).

On September 2, 2010, Defendant Yocum placed Torres on heroin protocol and ordered Vistaril and Bentyl after Nurse Seyfert informed him that Torres was suffering from heroin withdrawal. (Doc. 112, ¶ 19; Doc. 38-3, p. 20; Doc. 125, ¶ 19). On September 9, 2010, Defendant Yocum ordered a chest X-ray after learning that Torres had chest pain and a positive PPD test. (Doc. 112, ¶ 20; Doc. 38-3, p. 33; Doc. 125, ¶ 20).

On May 5, 2011, Defendant Yocum reviewed Torres' urinalysis results after Torres sustained a gym injury. (Doc. 112, ¶ 21; Doc. 38-3, p. 18; Doc. 125, ¶ 21). On September 11 2011, Defendant Yocum ordered Ensure upon learning that Torres requested additional nutrition. (Doc. 112, ¶ 22; Doc. 38-3, p. 35; Doc. 125, ¶ 22). Torres disputes the relevancy of any treatment he received in May and September, 2011. (Doc. 125, ¶¶ 21, 22).

## III. Discussion

The Eighth Amendment's proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Mere negligence, unsuccessful medical treatment, or

medical malpractice do not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *See Estelle*, 429 U.S. at 106; *Spruill v. Gillis*, 372 F.3d 218, 237 (3d Cir. 2004); *Monmouth Cty.*, 834 F.2d at 346.

Defendant Yocum argues that the record fails to support any claim that he acted with deliberate indifference to Torres' medical needs. (Doc. 111, at 5-7; Doc. 134). Torres counters that Defendant Yocum was aware of his purported HIV status, but failed to order any medications to treat his HIV.

The Court finds that there are genuine issues of material fact as to whether Defendant Yocum was deliberately indifferent to Torres' medical needs, and whether Torres was exposed to an unreasonable risk of future harm due to the period of missed HIV medication. In *Montgomery*, the Third Circuit Court of Appeals stated that an inmate's allegations that he was not provided with HIV medications for ten months, and that he was denied x-rays, blood work, and other prescription medications, constituted a *prima facie* case of deliberate indifference where his white blood cell count dropped to a dangerously low level during that period. *Montgomery v. Pinchak*, 294 F.3d 492 (3d Cir. 2002) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993) (deliberate indifference may exist in a variety of circumstances, including where "prison authorities prevent an

inmate from receiving recommended treatment," or "where knowledge of the need for medical care [is accompanied by the] intentional refusal to provide that care")).

In the instant action, Torres did not receive his HIV medication at the LCCF for a period of nine months, from September 2010 through June 2011. (Doc. 111-1, at 24; Doc. 111-2, at 32-33). In September 2010, Torres' white blood cell count was 350. (Doc. 111-1, at 25). In June 2011, his white blood cell count dropped to 150 due to the failure to receive medication. (*Id.*). As a result, Torres asserts that he suffered from a weakened immune system. (*Id.*).

When Torres initially arrived at the LCCF, he did not bring any prescriptions or medications with him. (Doc. 112, ¶ 7; Doc. 38-3, p. 19; Doc. 125, ¶ 7). Therefore, the medical staff was required to follow-up with Torres' physician. (*Id.*). Torres asserts that Defendant Yocum was a member of the medical staff and thus responsible for following-up with Torres' physician and referring him for any testing. (Doc. 125, ¶ 7).

It is undisputed that Defendant Yocum was aware of Torres' medical issues and medications during the September 10, 2010 examination, based on his review of the medical notes. (Doc. 111-2, at 104; Doc. 112, ¶¶ 8, 12; Doc. 112, Ex. A, p. 53, Ex. B, p. 104; Doc. 125, ¶¶ 8, 12). Although Defendant Yocum knew that Torres was HIV positive, he did not discuss HIV with Torres during the examination. (Doc. 111-2, at 104). The

parties dispute whether Torres informed Defendant Yocum of his medical issues, or raised any medical concerns, during this examination. (*Id.*). The parties further dispute whether Defendant Yocum believed that Torres' medical needs were being addressed by the nurses. (Doc. 112, ¶ 10; Doc. 112, Ex. B, p. 104; Doc. 125, ¶ 10). It is also disputed whether Defendant Yocum was ever informed of Torres' medical needs, or ever treated Torres, after the September 10, 2010 exam. (Doc. 112, ¶¶ 13-16; Doc. 125, ¶¶ 13-16).

Based on the record before this Court, it is concluded that there are genuine issues of material fact as to whether Defendant Yocum was deliberately indifferent to Torres' medical needs. The Court is concerned with claims alleging an inappropriate denial of medication, especially involving a serious virus such as HIV and the medical problems it may cause if not properly monitored and treated. Consequently, this issue will proceed to trial and the instant motion for summary judgment will be denied.

## IV. Conclusion

Based on the foregoing, Defendant Yocum's motion (Doc. 110) for summary judgment will be denied. An appropriate Order shall issue.

Date: March 31, 2016

Robert D. Mariani
United States District Judge